## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **Ghost Rocket Music, LLC,** | : | |
| **c/o Incorporatemax Inc.** | : | |
| **719 Sawdust Road, #204** | : | |
| **The Woodlands, Texas 77380** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Case No. 2:18-cv-325** |
| **v.** | : | |
| | : | **JUDGE _____** |
| **Iron City, LLC** | : | |
| **885 Sternberger Road** | : | |
| **Jackson, Ohio 45640** | : | |
| | : | |
| **And** | : | |
| | : | |
| **Jason Adkins** | : | |
| **885 Sternberger Road** | : | |
| **Jackson, Ohio 45640** | : | |
| | : | |
| **Defendants.** | : | |

## COMPLAINT

For its Complaint, Ghost Rocket Music, LLC, (hereinafter "Plaintiff" or "Ghost Rocket")

against Defendants Iron City, LLC (hereinafter "Iron City") and Jason Adkins (hereinafter

"Adkins") (collectively referred to as "Defendants") states as follows:

## PARTIES, JURISDICTION and VENUE

1.      Ghost Rocket is a Texas limited liability company.  Ghost Rocket is in the business

of marketing and managing talent and artists on a national basis.  Luke Danelon (hereinafter

"Danelon") is the Managing Partner of Ghost Rocket.

2.      Iron City purported to be an Ohio limited liability company, whose business

address is 885 Sternberger Road, Jackson, Ohio 45640.

3.      Upon information and belief, Iron City is not an official Ohio limited liability company.

4.      Upon information and belief, Adkins is the sole operator and owner of Iron City, LLC and resides at 885 Sternberger Road, Jackson, Ohio 45640.

5.      Subject matter jurisdiction is proper under this Court's diversity jurisdiction, 28 U.S.C. § 1332, because there is diversity of citizenship between the Parties and more than seventy-five thousand dollars ($75,000), exclusive of interest and costs, is in controversy.

6.      There is personal jurisdiction over Defendants because in connection with and as part of the transactions and occurrences out of which arise the causes of action pleaded in this Complaint, Defendants conducted business in the State of Ohio.

7.      Venue is proper in this Court: (i) pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions out of which the causes of action pleaded in this Complaint occurred in this judicial district; and (ii) pursuant to 28 U.S.C. § 1391(c) because Defendants purport to have a limited liability company operating in Ohio and personally reside in Ohio, within this judicial district.

## FACTS RELEVANT TO THE COMPLAINT

8.      Ghost Rocket is a purchaser and promoter of talent, mainly musical artists.  Ghost Rocket works and contracts with organizers of concerts and events that are seeking to hire artists or talent for their event.  Ghost Rocket then seeks out communications with appropriate artists or their agents in order to fulfill the needs and desires of the event organizers.  Danelon has been working in the music industry for over fifteen years.  During these years he had built his brand and reputation with artists and agencies.  This brand and long-standing reputation is the only way Ghost Rocket is able to book certain artists and work with certain agencies.

**The Contract**

9.      Sometime in early 2017, Adkins reached out to Danelon to hire Ghost Rocket to purchase talent on his behalf for a concert he was planning and organizing.

10.     On April 29, 2017, Ghost Rocket entered into a Performance Contract (the "Contract") with Iron City, executed by Adkins on behalf of Iron City.  A true and accurate copy of the Contract is attached to the Complaint as Exhibit 1.

11.     The Contract was entered into by Ghost Rocket and Iron City for services related to an event called "Light Up the Lake Event" (hereinafter referred to as the "Event") held on July 1, 2017 in Jackson, Ohio.  Upon information and belief, the Event was a charity event hosted by Defendants to benefit Navy Special Warfare Family Foundation and Child Tumor Foundation.

12.     Under the terms of the Contract, Ghost Rocket promised to perform the following obligations:

> Ghost will oversee National event talent buying as the festival's exclusive talent buyer ("Buyer"), which will consist of: Packaging the Event properly for agency submissions; sourcing Talent availabilities and pricing; negotiations of Contracts; consolation with regards to Artist Riders and the like; on-site talent representation; ensuring proper financial brokerage of payment and contractual obligations by all parties.

13.     Under the terms of the Contract, Iron City (defined as "Producer" in the Contract) promised to perform the following obligations:

> Producer will specifically manage payment as directed by this agreement and all travel (flights/rental vehicles), lodging (hotels, etc.) and transportation needs (taxi's, uber, etc.) for Luke Danelon and any additional staff member(s) as mutually determined needed, (more for on-site services as would [be] determined in advance).  Once Talent is sourced and agency(ies) become engaged, Producer hereby agrees to pay Agencies the full contracted amount for all written agreements (including e-mail transmissions). * * * Producer will be responsible for all payments & commissions in full.  Producer also agrees to fully comply with all contractual obligations between Producer and Artists including riders and ancillary functions to be determined and negotiated.

3

14.     Pursuant to the express terms of the Contract, Iron City agreed to pay Ghost Rocket a retainer of $5,000.  Iron City also agreed to pay Ghost Rocket Twenty Percent (20%) of Gross payments to Artists (on top of Artist guarantees), upon the successful booking of the artists.  The $5,000 retainer would be deducted from amount owed for the Twenty Percent (20%) of Gross payments to Artists.

**The Hiring of Performance Artists**

15.     After the Contract was executed with Defendants, Ghost Rocket acquired and arranged for performance artists Buckcherry, Uncle Kracker, Pop Evil, and Alien Ant Farm (collectively the "Performance Artists") to perform at the Event.

16.     Defendants did not pay Ghost Rocket the retainer of $5,000, as required under the Contract.

17.     Despite Defendants' failure to pay Ghost Rocket its retainer, Ghost Rocket continued to perform its obligations under the Contract and received approval for each artist's fees from Defendants and secured the Performance Artists for the Event.

18.     Ghost Rocket had to leverage decades of relationships with artists and agencies in order to secure each artist's performance at the Event.  Ghost Rocket worked directly with TKO booking agency and Creative Artists Agency ("CAA") in order to secure artists for the Event.

19.     Talent agencies operate on a reputation and experience basis.  In the industry, a solid reputation and trusted experience are the only way that talent purchasers like Danelon and his company Ghost Rocket are able to book artists.

20.     TKO is one of the premier rock music agencies in North America.  Danelon has fostered and built a relationship with TKO for over (10) years which includes the successful hiring

4

of talent from TKO with a hundred percent (100%) perfect standing of payment and fulfillment of artists. TKO is the agency for artists Buckcherry and Alien Ant Farm.

21.     CAA is one of the largest talent agencies in the world. Danelon has fostered and built a relationship with CAA for over ten (10) years which includes the successful hiring of talent from CAA with a hundred percent (100%) perfect standing of payment and fulfillment of artists. CAA is the agency for artists Uncle Kracker and Pop Evil.

22.     Beyond working with the agencies, Danelon also has to foster and develop relationships with each artist's manager. Managers also greatly prefer to work with individuals or companies that have developed trust and a good business reputation in the industry.

### Required Performance Fees for the Performance Artists

23.     Based upon the booking of the Performance Artists for the Event, the following artist fees were determined and agreed upon: (i) Buckcherry's performance fee was $40,000; (ii) Uncle Kracker's performance fee was $40,000; (iii) Pop Evil's performance fee was $30,000; and (iv) Alien Ant Farm's performance fee was $10,000. The total fees for the Performance Artists were $120,000 and this amount was due in full to each agency prior to the Event from Defendants.

24.     The booking process for the Performance Artists required a deposit from Defendants, in the amount of fifty percent (50%) of the full performance fee to be paid immediately upon booking.

25.     Upon information and belief, on or around June 16, 2017, Defendants wired to CAA $30,000 for the artist fee deposits related to artists Uncle Kracker and Pop Evil. The total performance fee for these two artists was $70,000, so a deposit for these artists equaled $35,000. Defendants only wired $30,000 and did not provide CAA a break-down of the amounts due to each artist. Upon information and belief, CAA allocated the funds to pay Uncle Kracker $20,000 for the

deposit and Pop Evil $10,000 for the deposit. Therefore, Pop Evil was considered $5,000 short of the required deposit amount.

26. Upon information and belief, on or around June 17, 2017, Defendants wired to TKO $25,000 for a deposit fee for the artists for Buckcherry ($20,000) and Alien Ant Farm ($5,000).

27. Upon information and belief, based upon Defendants' failure to pay the entire deposit for Pop Evil, CAA demanded full payment of the artist fee for this artist prior to the Event.

28. Upon information and belief, on or around June 26, 2017, Defendants wired to CAA an additional $15,000 which was applied by CAA to cover the remainder of Pop Evil's deposit and Pop Evil's full artist fee.

29. Upon information and belief, on or around June 30, 2017, Defendants wired to CAA an additional $15,000 which was applied to Uncle Kracker's artist fee.

30. On July 1, 2017, Adkins, on behalf of Iron City, LLC, submitted a check to Danelon made out to BC World Wide Tours, Inc. in the amount of $20,000 for remaining fifty percent (50%) of the performance fee for the Event for performing artist Buckcherry. Upon information and belief, the check bounced. BC World Wide Tours, Inc. is Buckcherry's business account. Since this had to be paid on the day of the event, upon information and belief, TKO directed Defendants to pay the band directly.

31. Defendants also agreed to pay Pop Evil $600 in cash the day of the Event. Defendants did not pay this so Ghost Rocket paid Pop Evil this amount.

32. The Performance Artists all performed as promised at the Event on July 1, 2017.

**Non-payment by Defendants of Performance Artists' Fees**

33.     Defendants did not pay TKO or CAA the remaining amounts owed for Buckcherry, Uncle Kracker or Alien Ant Farm towards their full performance fee.

34.     Upon information and belief, after the Event, Defendants owed TKO $25,000 for the remaining performance fees for Alien Ant Farm ($5,000) and Buckcherry ($20,000).

35.     Upon information and belief, after the Event, Defendants owed CAA $10,000 for the remaining performance fees for Uncle Kracker.

36.     Shortly after the Event, Ghost Rocket sent an invoice to Defendants for all unpaid amounts due and owing to Ghost Rocket for its commission on each Performance Artist and its billable expenses.  At that time, a total of $28,433.34 was owed to Ghost Rocket, unpaid by Defendants.  A true and accurate copy of the July 5, 2017 Invoice is attached to the Complaint as Exhibit 2.

37.     Based upon Defendants' failure to pay the full amounts to TKO and CAA, both agencies reached out directly to Ghost Rocket and Danelon and demanded full payment for their artists' performances.  TKO and CAA both threatened to take legal action against Ghost Rocket and Danelon for the booking of the Performance Artists to perform at an Event where they were not fully compensated.

38.     Based upon Ghost Rocket and Danelon's relationship and reputation with the agencies, spanning over a decade, Ghost Rocket had no choice but to pay the artists and agencies directly in order to prevent damage, or further damage, to his reputation and relationships with the artists and agencies.  Danelon had to take out loans in order to make payments to both TKO and CAA towards the outstanding artist fee amounts owed by Defendants.

39.     On July 12, 2017, Danelon personally paid TKO $5,000 for the remaining performance fee related to Alien Ant Farm.

40.     Upon information and belief, on or around August 2, 2017, Defendants wired an additional $2,500 to CAA for part of the remaining artist fee owed to Uncle Kracker.

41.     On December 1, 2017, Danelon personally paid CAA $2,500 for part of the remaining performance fee related to Uncle Kracker.

42.     On January 5, 2018, Danelon personally paid CAA $5,000 for the remaining performance fee related to Uncle Kracker.

43.     Unfortunately, even with Danelon's additional payments to CAA and TKO, the relationships with both agencies have been tarnished by Defendants' conduct and failure to pay the artist their fees.  Specifically, TKO told Danelon that it will not work with him or Ghost Rocket again.  Both TKO and CAA can still, and may, bring lawsuits like they have threatened against Ghost Rocket and Danelon based upon this Event.  Both agencies can also tarnish Ghost Rocket and Danelon's reputation in the music industry as it relates to other agencies and management companies.

44.     Ghost Rocket's business has suffered since the Event, due in part to the artists not receiving full payment for performances and due to the loan amount and monetary obligation that Ghost Rocket had to take on in order to make an effort towards resolving this issue with the agencies.

**Defendants' Obligations to Pay**

45.     Upon information and belief, as of the date of the filing of this Complaint, Defendants still have not paid $7,500 to CAA as promised for the performance fee for Uncle Kracker.

8

46.     Upon information and belief, as of the date of the filing of this Complaint, Defendants still have not paid $20,000 to TKO Agency as promised for the performance by Buckcherry and has not paid $5,000.00 to TKO Agency as promised for the performance by Alien Ant Farm.

47.     As of the date of this filing, Defendants have failed to pay the contracted consulting fee to Ghost Rocket for the Performance Artists in the amount of $24,000.00.

48.     As of the date of this filing, Defendants have failed to pay any contractual reimbursable funds to Ghost Rocket pursuant to the Contract in the amount of $4,667.34.

49.     Ghost Rocket has specifically demanded payment from Defendants for the amount owed under the Contract and reimbursement for the amounts paid by Ghost Rocket personally to CAA, TKO, and Alien Ant Farm. Defendants have continuously promised to pay the full amounts owed but have failed to fulfil their contractual duties of payment and have failed to honor their continued promises to repay Ghost Rocket the amounts it is owed.

50.     In June and July 2017, Adkins sent multiple texts and emails to Ghost Rocket and Danelon making multiple representations including promising to: (1) send wires with the full amount of money, (2) provide checks on the date of the Event for the outstanding amount owed, and (3) pay the full amounts owed to Ghost Rocket. These representations were false as Defendants have not paid, knew that they did not have the ability to pay, and never intended to pay. Defendants knew that Ghost Rocket would fulfill its responsibilities to have all the Performance Artists perform at the Event and that Ghost Rocket was specifically relying upon Defendants' misrepresentations for payment to organize and pay the Performance Artists.

51.     Ghost Rocket and Danelon relied upon Defendants' continued promises to pay by securing the Performance Artists and fronting the amounts owed to the agencies from Defendants.

52.     On September 28, 2017, undersigned counsel sent a letter to Defendants with an updated Invoice and a demand for payment.  Defendants did not respond to that letter.  A true and accurate copy of the September 28, 2017 correspondence is attached hereto as Exhibit 3.

53.     As of the filing of this Complaint, Defendants owe $61,167.34 under the Contract with Ghost Rocket and the reimbursements owed from the Event.  A true and accurate copy of the invoice is attached hereto as Exhibit 4.

## COUNT ONE (Breach of Contract)

54.     Ghost Rocket incorporates the above allegations as if fully restated herein.

55.     Defendants agreed to be bound and obligated to the terms and conditions under the Contract.

56.     Ghost Rocket has fully performed all of its obligations under the Contract.

57.     The failure to pay all the amounts owed under the Contract is a material breach of the Contract.

58.     Defendants have breached the Contract they entered into with Ghost Rocket by failing (i) to pay the full amounts of performance fees to TKO and CAA; (ii) to pay any and all reimbursable expenses of Ghost Rocket; (iii) to pay retainer to Ghost Rocket;  and (iv) to pay the agreed upon consulting fees to Ghost Rocket.

59.     As a result of Defendants' material breach of the Contract, Ghost Rocket is entitled to a judgment in its favor against Defendants in an amount to be determined at trial, but not less than $61,167.34, and all such other relief as is available.

## COUNT TWO (Unjust Enrichment, in the alternative to Count One)

60.     Ghost Rocket incorporates the above allegations as if fully restated herein.

61.     Defendants' failure to abide by their obligations under the Contract conferred upon them a benefit of not less than $61,167.34.

62.     Specifically, Ghost Rocket paid the agencies directly the amount owed by Defendants.

63.     Ghost Rocket is responsible for over $32,500.00 to TKO and CAA related to performance fees owed for performing artists Buckcherry, Uncle Kracker, and Alien Ant Farm that was the sole and contractual responsibility of Defendants.

64.     Ghost Rocket personally paid $12,500 to CAA and TKO related to the performance fees left unpaid by Defendants.

65.     Defendants were obligated to pay all obligations under the Contract and would be unjustly enriched by Ghost Rocket if the Defendants are not required to pay the full amount owed.

66.     As a result of the unjust enrichment, Ghost Rocket is entitled to a judgment in its favor against the Defendants in an amount to be determined at trial, but not less than $61,167.34, and all such other relief as is available.

### **COUNT THREE (Promissory Estoppel, in the alternative to Counts One and Two)**

67.     Ghost Rocket incorporates the above allegations as if fully restated herein.

68.     Since April 2017, Ghost Rocket performed all obligations under the Contract based upon the promise for payment from Defendants.

69.     Ghost Rocket relied upon the promise of payment and acceptance of all the obligations under the Contract by Defendants in agreeing to enter into the Contract with Defendants and by performing its obligations under the Contract, in full.

70.     Ghost Rocket's reliance was reasonable as the terms of payment by Defendants would be expected for its work in procuring the Performance Artists and securing their attendance at the Event.

71.     As a result of the reliance upon the Defendants, Ghost Rocket is entitled to a judgment in its favor against the Defendants in an amount to be determined at trial, but not less than $61,167.34, and all such other relief as is available.

### COUNT FOUR – (Fraud)

72.     Ghost Rocket incorporates the above allegations as if fully restated herein.

73.     In April 2017, and through the present time, Adkins fraudulently represented that he was authorized to act on behalf of Iron City, LLC and that Iron City, LLC was a limited liability company in Ohio.  Adkins fraudulently purported to act on behalf of Iron City, LLC by executing the Contract under the name Iron City, LLC and submitting checks under the name Iron City, LLC.

74.     On multiple occasions through and including June and July 2017, Adkins made oral and written promises and representations to Ghost Rocket regarding his promise to pay artist fees in full, reimburse Ghost Rocket for its expenses, and pay Ghost Rocket its consulting fees.

75.     On multiple occasions through and including June and July 2017, Adkins made oral and written promises and representations to Ghost Rocket that he was making wire transfers of money for the Performance Artists' fees, when he was not.

76.     The promises and representations made by Adkins were false and Adkins either knew he had no intention to ever pay, did not have the funds to pay, or acted in reckless disregard to his ability to pay for the services provided to him.

77. Adkins knew that his multiple promises and representations to pay would be relied upon by Ghost Rocket and that Ghost Rocket would undertake obligations and debts based upon the reliance of payment from Adkins.

78. Ghost Rocket did in fact rely upon Adkins' misrepresentations and was damaged as a result of Adkins' fraud in an amount to be determined at a trial in this matter.

## COUNT FIVE – (Fraudulent Inducement)

79. Ghost Rocket incorporates the above allegations as if fully restated herein.

80. Adkins made oral and written promises and representations to Ghost Rocket regarding Iron City, LLC, including entering into a contract on behalf of Iron City, LLC and making multiple promises to pay the Performance Artists' fees in full, reimburse Ghost Rocket for its expenses, and pay Ghost Rocket its consulting fees under the name Iron City, LLC.

81. The promises and representations made by Adkins were false as Iron City, LLC is not a limited liability company in Ohio. Adkins knew that Iron City, LLC was not a legal entity and Adkins had no authority to enter into any contract on behalf of Iron City, LLC.

82. Adkins knew that the multiple promises and representations that Iron City, LLC was a legal entity in the state of Ohio would be relied upon by Ghost Rocket and that Ghost Rocket would enter into the Contract with Iron City, LLC and undertake obligations and debts based upon the reliance from Adkins.

83. Ghost Rocket did in fact rely upon Adkins' misrepresentations and was damaged as a result of Adkins' fraudulent inducement in an amount to be determined at a trial in this matter.

**WHEREFORE**, Ghost Rocket Music, LLC respectfully demands judgment as follows:

1.      As to Count One against Iron City, LLC and Jason Adkins, damages in an amount to be determined at trial, but not less than $61,167.34, and all such other relief as is available, plus interest;

2.      As to Count Two against Iron City, LLC and Jason Adkins, in the alternative to relief under Count One, damages in an amount to be determined at trial, but not less than $61,167.34, and all such other relief as is available, plus interest;

3.      As to Count Three against Iron City, LLC and Jason Adkins, in the alternative to relief under Counts One and Two, damages in an amount to be determined at trial, but not less than $61,167.34, and all such other relief as is available, plus interest;

4.      As to Count Four against Iron City, LLC and Jason Adkins, damages in an amount to be determined at trial, and all such other relief as is available, plus interest;

5.       As to Count Five against Iron City, LLC and Jason Adkins, damages in an amount to be determined at trial, and all such other relief as is available, plus interest;

6.      Costs of this action, collection and reasonable attorney fees;

7.      An award of punitive or exemplary damages, attorney fees, costs, post-judgment interest, pre-judgment interest, and such further order of relief as may be appropriate in law or equity.

Respectfully submitted,

*/s/ Joseph C. Pickens* _____
Joseph C. Pickens (0076239) (Trial Counsel)
Celia M. Schnupp (0085207)
Leon D. Bass (0069901)
Taft Stettinius & Hollister LLP
65 East State Street, Suite 1000
Columbus, OH  43215
Telephone:  614-221-2838
Fax:          614-221-2007
Email:  cschnupp@taftlaw.com
         jpickens@taftlaw.com
         lbass@taftlaw.com

*Attorneys for Plaintiff*

22287069.2